## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**RICHARD JAMES SHANNON,**

      **Plaintiff,**

    **v.**                                       **Civil Action No. 3:22cv460**

**CITY OF RICHMOND VIRGINIA**
**SHERIFF'S OFFICE**

      **and**

**ANTOINETTE V. IRVING,**

      **Defendants.**

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendants City of Richmond Virginia Sheriff's Office (the "Sheriff's Office) and Antoinette V. Irving's, the City of Richmond Sheriff, in her official capacity, ("Sheriff Irving") (collectively, with the Sheriff's Office, the "Defendants") Motion to Dismiss (the "Motion").[1]  (ECF No. 8.)  The Defendants brought the Motion pursuant

---

[1] The Defendants properly filed an exhibit to their Motion to Dismiss:  a copy of Shannon's Charge of Discrimination filed with the United States Equal Employment Opportunity Commission ("the EEOC Charge.") (ECF No. 9-1.)  The Court will consider this exhibit when ruling on the Defendants' Motion to Dismiss Shannon's Complaint because he refers to the EEOC Charge throughout his Complaint, it is integral to his claim, and neither party disputes its authenticity. *Witthohn v. Fed. Ins. Co.,* 164 F.App'x 395, 396–97 (4th Cir. 2006) ("[A] court may consider . . . documents central to plaintiff's claim[s] and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed" (citations omitted)).

    The Court will also consider the exhibit Shannon attaches to his Complaint:  the March 29, 2022 Right to Sue Letter which states that the United States Equal Employment Opportunity Commission (the "EEOC") would "not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute." (ECF No. 1-2.)

to Federal Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6).[3]  (ECF No. 9, at 2–3.)[4]  The
Defendants provided Plaintiff Richard J. Shannon with appropriate notice pursuant to *Roseboro
v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).  (ECF No. 7.)  Shannon, proceeding *pro se*, filed
his response opposing the Motion, (ECF No. 10), and the Defendants replied, (ECF No. 12.)
This matter is fully briefed and ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately
present the facts and legal contentions, and argument would not aid the decisional process.  For
the reasons that follow, the Court will grant in part and deny in part the Defendants' Motion
to Dismiss.

### I.  Factual and Procedural Background

**A.   Factual Background**

In his May 1, 2019 EEOC Charge, Shannon alleged the following facts in pertinent part:

I.  I was hired as a Deputy Sheriff with [the City of Richmond Sheriff's
Office] on February 17, 2000. . . In October 2018, I was having a
conversation with an Employee Assistance Program representative.  While
[] speaking, a representative from Human Resources overheard my
conversation.  Without my permission, he informed the Sheriff, who made
a command referral for me to have a medical evaluation.  I was scheduled
for multiple appointments which took a month to complete.  I was directed
not to return to work until I completed my appointments.  The result of the
evaluation was that I was diagnosed with a disability.  I informed Human
Resources of my diagnosis verbally and in writing that same month.
Although I requested to be returned to work, I was denied.

---

[2] "[A] party may assert the following defense[ ] by motion:  (1) lack of subject-matter
jurisdiction."  Fed. R. Civ. P. 12(b)(1).

[3] A party may move to dismiss a claim against it based on the "failure to state a claim
upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

[4] The Court employs the pagination assigned by the CM/ECF docketing system.  The
Court corrects the spelling, punctuation, and capitalization in the quotations from the parties'
submissions.  The Court omits any secondary citations from the parties' submission.

II.  I attempted several times to return to work but was asked for a doctor[']s release[,] which I provided.  In January 2019, I also requested an accommodation of working 40 hours per week with limited interaction with inmates[,] but that was also denied.  In March 2019, since I was denied an accommodation, I wanted to return to work because I was losing leave.  I requested to be returned without the accommodation but again, I was told that I needed documentation from my doctor to do so.  I have provided documentation as requested but I still have not been returned to work.

III.  I believe I was discriminated against by being denied an accommodation and not being allowed to return to work because of my disability, in violation of the Americans with Disabilities Act of 1990, as Amended.

(ECF No. 9-1, at 1–2.)  In the EEOC Charge, Shannon lists the earliest date that the

discrimination took place as October 1, 2018, and the latest date as April 30, 2019.  (ECF

No. 9-1, at 1.)  Where requested to identify the basis of the discrimination, Shannon checked

only the disability box.  (ECF No. 9-1, at 1.)   As noted, Shannon places his March 29, 2022

EEOC Right to Sue Letter in the record.  (ECF No. 1-2.)

Shannon states that the Defendants "discriminated against [him] due to a diagnosis of

[post-traumatic stress disorder ('PTSD')]."  (ECF No. 1-1, at 1.)  He explains that after filing the

EEOC Charge, the Defendants "offered [him] a light duty position, which [he] accepted."  (ECF

No. 1-1, at 1.)  However, he was "retaliated against."  (ECF No. 1-1, at 1.)

Shannon does not specify when the retaliation began.  But Shannon has "numerous

official department emails showing incontrovertible proof that the department actively retaliated

[against him] and created a hostile [work] environment merely because [he] sought protections

under the ADA for [his] covered diagnosis."  (ECF No. 1-1, at 2.)

The Defendants refused to allow Shannon "to return to duty after being cleared to return

to duty by the Richmond Employee Assistance Program clinician and [his] personal physician."

3

(ECF No. 1-1, at 1.)  Shannon asserts that he provided "[m]edical clearances both . . . to the Sheriff and her Office," who acknowledged receipt of them.  (ECF No. 1-1, at 1.)

The Defendants retaliated against him by "treating [him] differently from what department Standard Operating Procedures required by forcing [him] to adhere to prohibited dresswear and grooming policies."  (ECF No. 1-1, at 2.)  Indeed, "[u]nqualified personnel were transferred into positions [that he] qualified [for] in order for [the Defendants] to claim there were no available positions."  (ECF No. 1-1, at 2.)

Shannon sought a reasonable accommodation for only "a maximum of 50% of [his] work week to be in contact with inmates."  (ECF No. 1-1, at 3.)  While "[t]he [D]efendants claim that one of the 'essential job functions' of the position of deputy sheriff is direct contact with inmates 100% of the time[, t]his is not true . . . [because] there are over 150 positions in the nearly 500 person agency that do NOT require 100% of the duty to be in direct contact [with inmates]."  (ECF No. 1-1, at 2–3.)  Shannon is "fully able to have contact with inmates[ and] frequently did on a daily basis during the light duty assignment without issue and in full compliance with the reasonable accommodation requested."  (ECF No. 1-1, at 3.)

Shannon notes that, after he filed his EEOC Charge, the "light duty position" he was assigned to already existed and mirrored the requirements of the reasonable accommodation he requested.  (ECF No. 1-1, at 3.)  Indeed, Shannon asserts that the "deputy assigned to this existing position trained [him] for the requirements of the position," that that deputy "was preparing to retire," and that he "was told by the supervisor of that position that [he] would be permanently assigned to the position when that deputy retired." (ECF No. 1-1, at 3.).

The Defendants have previously made special accommodations for deputies which included having "zero contact" with inmates.  (ECF No. 1-1, at 4.)  The department doctor

agreed with Shannon's medical providers and "fully endorsed [his] reasonable accommodation." (ECF No. 1-1, at 4.)  But "the [D]efendants chose to ignore the psychiatrist they employed to conduct a Fitness For Duty medical review of [Shannon] and [his] disability."  (ECF No. 1-1, at 4.)  The department doctor "concluded that [he] was fit for duty and could be placed in several positions available in the Sheriff's Office."  (ECF No. 1-1, at 4.)

Against the findings and recommendations of the department doctor, the Defendants terminated Shannon's employment.  (ECF No. 1-1, at 1.)  At the time the Defendants terminated his employment, Shannon had "19 years and 11 months of service . . . [and] was 30 days [short of] receiving full [Law Enforcement Officers', ('LEO')] retirement."  (ECF No. 1-1, at 1.) Shannon charges that the Defendants thus engaged in "clear and malicious retaliation" in part because they "deliberately took several months to initiate the Fitness For Duty [Review,] dragging out the process and then waiting nearly 30 days to release the results, ensuring [his employment] was terminated as close to 20 years [of service] as possible without achieving full retirement."  (ECF No. 1-1, at 4.)

### B.   Procedural Background

On May 1, 2019, Shannon filed a charge of discrimination based on disability against the City of Richmond Sheriff's Office with the United States Equal Employment Opportunity Commission (the "EEOC").  Shannon asserted that the Sheriff's Office "discriminated against [him] by . . . [denying him] an accommodation and [by not allowing him] to return to work [due to his] disability."  (ECF No. 9-1, at 2.)

On March 9, 2022, the EEOC issued Shannon a "Determination and Notice of Rights" letter (the "Right to Sue Letter"), in which the EEOC determined that it would not proceed further with the investigation.  (ECF No. 1-2, at 1.)  In the Right to Sue Letter, the EEOC granted

Shannon the right to sue the under federal law, provided that Shannon filed his lawsuit within 90 days of receiving the letter. (ECF No. 1-2, at 1.)

On June 27, 2022, 90 days later, Shannon timely filed his Complaint against the Defendants in this Court. (ECF No. 1.) Shannon's Complaint lacks clarity and precision and fails to delineate specific causes of action. However, both the Supreme Court of the United States and the United States Court of Appeals for the Fourth Circuit instruct courts to afford *pro se* filings a liberal construction when reviewing pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Noble v. Burnett*, 24 F.3d 582, 587 n. 6 (4th Cir. 1994).

Keeping these principles in mind, the Court liberally construes Shannon's Complaint to assert the following claims against the Defendants:

(1) failure to accommodate under Title I of the Americans with Disabilities Act (the "ADA");[5]

(2) retaliation under Title V of the ADA.[6]

(3) discriminatory discharge under Title I of the ADA;[7] and,

(4) hostile work environment under Title I of the ADA;[8]

---

[5] The ADA "prohibits an employer from discriminating against 'an individual with a disability' who with 'reasonable accommodation' can perform a job's essential functions, 42 U.S.C. §§ 12112(a) and (b), unless the employer 'can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business,' § 12112(b)(5)(A)." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 391 (2002) (alteration in original).

[6] The ADA, in pertinent part, provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

[7] The ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a)).

[8] The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and *other terms,*

As relief, Shannon seeks reinstatement, backpay, and compensatory damages.  (ECF No. 1, at 5–6.)

On August 18, 2022, the Defendants filed their Motion to Dismiss.  (ECF No. 8.) Shannon filed his response opposing the Motion, (ECF No. 10), and the Defendants replied, (ECF No. 12.)

## II.  Standards of Review

### A.    Rule 12(b)(1)[9]

In a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(1) challenging the Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper.  *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  A motion to dismiss pursuant to FRCP 12(b)(1) can attack subject-matter jurisdiction in two ways.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing

---

*conditions, and privileges of employment.*"  42 U.S.C. § 12112(a) (emphasis added).  "The Fourth Circuit has held that the ADA's prohibition against discrimination in the 'terms, conditions, and privileges of employment' provides a cause of action for a hostile work environment based on disability discrimination."  *Rohan v. Networks Presentation LLC,* 192 F. Supp. 2d 434, 436 (D. Md. 2002) (citing *Fox v. General Motors Corp.*, 247 F.3d 169, 175–76 (4th Cir.2001)).

[9] Courts have not been uniform as to whether a dismissal due to Eleventh Amendment sovereign immunity should be examined through Rule 12(b)(1) or Rule 12(b)(6).  *Compare Noel-Batiste v. Va. State Univ.,* No. 3:12cv826, 2013 WL 499342, at *1-3 (E.D. Va. Feb. 7, 2013) (analyzing dismissal for Eleventh Amendment sovereign immunity via Rule 12(b)(6)), *with Haley v. Va. Dep't of Health,* No. 4:12cv16, 2012 WL 5494306, at *1-2 (W.D. Va. Nov. 13, 2012) (same, but under Rule 12(b)(1)).  "The recent trend, however, appears to treat Eleventh Amendment [i]mmunity motions under Rule 12(b)(1)."  *Haley,* 2012 WL 5494306, at *2 n.2 (citations omitted).

The distinction makes no practical difference to the case at bar.  In the Court's Rule 12(b)(1) analysis, it utilizes the same protections afforded under Rule 12(b)(6).

*Adams*, 697 F.2d at 1219). First, a Rule 12(b)(1) motion may attack the complaint on its face,

asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie.

*See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *Adams*, 697 F.2d at 1219). "When a

defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is

afforded the same procedural protection as he [or she] would receive under a Rule 12(b)(6)

consideration.'" *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219). In such a challenge,

a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n*, 914 F.

Supp. at 1338 (citing *Adams*, 697 F.2d at 1219).

 Alternatively, a Rule 12(b)(1) motion may also challenge the existence of subject-matter

jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R.

Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219); *see

also Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *Adams*, 697 F.2d at 1219). In such

a case, because a party challenges the court's "very power to hear the case," the trial court is free

to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F.

Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.

1977)). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of

disputed material facts will not preclude the trial court from evaluating for itself the merits of

jurisdictional claims." *Id.*; *see also Adams*, 697 F.2d at 1219.

 **B.** <u>**Rule 12(b)(6)**</u>

 "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

(1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere "labels and conclusions" declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *See Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)). This principle applies only to factual allegations; however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn*, 164 F. App'x at 396–97 (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

### C.   Obligation to Construe *Pro Se* Pleadings Liberally

Because Shannon proceeds *pro se* in this case, the Court liberally construes his filings. *See Erickson*, 551 U.S. at 94 ("A document filed *pro se* is to be liberally construed . . .and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks and citations omitted)). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Ashcroft*, 556 U.S. at 684 (outlining pleading requirements under Federal Rule of Civil Procedure 8 for "all civil actions"). A *pro se* plaintiff litigant must allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and

10

constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint."
*Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014) (citations omitted).

### III.  Analysis

Shannon asserts claims under the ADA for:  (1) failure to accommodate; (2) retaliation; (3) discriminatory discharge; and, (4) hostile work environment.  As relief, Shannon seeks reinstatement, backpay, and compensatory damages from the Defendants.  The Defendants move to dismiss all Counts against them.

First, the Court must dispose of two preliminary issues:  whether the Sheriff's Office is a cognizable legal entity with the capacity to be sued and whether the doctrine of sovereign immunity bars recovery of monetary damages from the Sheriff in her official capacity for Shannon's ADA claims.  As to the first issue, the Sheriff's Office is not a cognizable legal entity, so the Court must grant the Motion to Dismiss with respect to all claims against the Sheriff's Office.  Second, sovereign immunity bars recovery of monetary damages for Shannon's ADA claims.  Therefore, the Court must dismiss Shannon's request for monetary damages and back pay.

As to the substance of Shannon's discrimination claims, the Court concludes that because the EEOC Charge controls the allegations the Court may consider, three of his claims must be dismissed.  Shannon's second (retaliation), third (discriminatory discharge), and fourth (hostile work environment) claims will be dismissed because Shannon failed to exhaust his administrative remedies as to those three claims.

In contrast, the Court will deny the Motion to Dismiss as to Shannon's first claim (failure to accommodate) to the extent Shannon seeks reinstatement.  Shannon plausibly states a claim of failure to accommodate at this procedural juncture.

### A. Shannon's Claims Against the Sheriff's Office Must Be Dismissed Because the Sheriff's Office Is Not a Cognizable Legal Entity

As to the first preliminary matter the Court must assess, Shannon named the City of Richmond's Sheriff's Office ("Sheriff's Office") as a defendant in this action.  The Defendants assert that the Sheriff's Office is not a proper defendant in this lawsuit because it is not *sui juris*. They are correct.

"An entity is not *sui juris* if it is an agency of the municipality and not a separate legal entity." *Francis v. Woody*, Case No. 3:09cv235, 2009 WL 1442015, at *6 (E.D. Va. May 22, 2009) (quoting *Corbin v. Woolums*, Case No. 3:08cv173, 2008 WL 2149911, at *4 (E.D. Va. May 20, 2008)).  Furthermore, a "Sheriff's Office is not a properly named party defendant because the . . . Sheriff is an independent constitutional officer; not a legally recognized entity separate from the Sheriff himself and the county government." *Clark v. Beasley,* 3:03cv1074, 2004 WL 3222732, at *4 (E.D.Va. July 8, 2004); *see also Revene v. Charles County Comm'rs,* 882 F.2d 870, 874 (4th Cir.1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."(citations omitted)).

Therefore, because the Sheriff's Office is not a cognizable legal entity, the Court will dismiss any claims against the Sheriff's Office.

**B.     Shannon's Claims Against the Sheriff Must be Dismissed in Part Because Monetary Damages Are Barred by Sovereign Immunity Under the ADA and Because Shannon Has Failed to Properly Exhaust his Administrative Remedies as to Some Claims**

The next preliminary issue the Court will consider is the viability of Shannon's claims against Sheriff Irving in her official capacity.  First, because the doctrine of sovereign immunity bars recovery of monetary damages under Title I of the ADA, Shannon's request for monetary damages and back pay must be dismissed.  Also, as to Shannon's substantive claims, because the EEOC Charge controls the allegations the Court may consider, Shannon's second (retaliation), third (discriminatory discharge), and fourth (hostile work environment) claims against the Sheriff will be dismissed because Shannon failed to exhaust his administrative remedies.

In contrast, the Court will deny the Motion to Dismiss as to Shannon's first claim for failure to accommodate to the extent Shannon seeks reinstatement.  Shannon plausibly states a claim of failure to accommodate at this procedural juncture.

**1.     Sovereign Immunity Serves as a Partial Bar to Shannon's Claims Because Monetary Damages Are Not Available to Shannon Under These Causes of Actions**

The Defendants assert Eleventh Amendment[10] immunity as a bar to Shannon's claims against Sheriff Irving.  For the reasons that follow, Shannon's ADA claims will be dismissed to the extent he seeks monetary damages and back pay because the doctrine of sovereign immunity bars those remedies.  However, the doctrine of sovereign immunity does not bar Shannon's claims to the extent he seeks reinstatement.

---

[10] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

"The Eleventh Amendment bars suit in federal court against an unconsenting state and any governmental units that are arms of the state unless Congress has abrogated the immunity." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (citing *Alden v. Maine*, 527 U.S. 706, 755–57 (1999)); *Smith v. Va. Dep't of Agric. & Consumer Servs.*, No. 3:12cv77, 2012 WL 2401749, at *7 (E.D. Va. June 25, 2012). "[F]ederal district courts applying Virginia law have repeatedly held that Virginia Sheriffs, and their deputies, are 'state officers' for the purpose of the Eleventh Amendment." *Volette v. Watson*, 937 F. Supp. 2d 706, 714 (E.D. Va 2013) (collecting cases); *see e.g., Francis*, 2009 WL 1442015, at *4; *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D. Va. 1992) ("In Virginia, sheriffs are state officials."); *Harris v. Hayter*, 970 F. Supp. 500, 502 (W.D. Va. 1997) ("In Virginia, a suit against a sheriff in his official capacity is a suit against a state official.")). To abrogate sovereign immunity, "Congress must unequivocally declare its intent to abrogate and must act pursuant to a valid exercise of its power." *Coleman*, 626 F.3d at 191 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, (1996)).

The Supreme Court of the United States has held that the Eleventh Amendment bars suits against states to recover money damages under Title I of the ADA. *Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 360, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Here, the Commonwealth of Virginia did not consent to be sued under the ADA. "[A]n award of back pay would be tantamount to a monetary award against the Commonwealth. Such an award would violate the Eleventh Amendment, and thus, it is not permissible." *Allen v. Coll. of William & Mary,* 245 F. Supp. 2d 777, 788 (E.D. Va. 2003). Thus, to the extent Shannon seeks any monetary damages or back pay for his failure to accommodate, discriminatory discharge, or

hostile work environment claims under Title I of the ADA, they must be dismissed as barred by sovereign immunity.

As to Shannon's second claim, retaliation, neither the Supreme Court of the United States nor the Fourth Circuit has addressed whether Congress validly abrogated sovereign immunity under Title V of the ADA. But the circuit courts and district courts addressing this issue have concluded that Eleventh Amendment immunity applies to retaliation claims brought under Title V of the ADA when such claims are predicated on an alleged violation of Title I of the ADA. *See, e.g., Demshki v. Monteith,* 255 F.3d 986, 988 (9th Cir. 2001); *Chiesa v. N.Y. State Dep't of Labor,* 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009); *Shabazz v. Tex. Youth Comm'n,* 300 F. Supp. 2d 467, 472–473 (N.D. Tex.2003); *Davis v. Vt., Dep't of Corr.,* 868 F. Supp. 2d 313, 322 (D. Vt. 2012); *Caudill v. S.C. Crim. Just. Acad.,* No. 3:10–2291, 2011 WL 4479594, at *2 (D.S.C. Aug. 11, 2011). That is the circumstance at bar and the Court finds the reasoning in these cases persuasive. Because Shannon's retaliation claim is predicated on alleged violations of Title I of the ADA, the doctrine of sovereign immunity bars his claim to the extent he seeks monetary damages or back pay.

The Court must next determine whether the present suit can fairly be characterized as one "for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." *Bragg v. W. Va. Coal Ass'n,* 248 F.3d 275, 292 (4th Cir. 2001). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit [against a State], a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation marks and citations omitted) (second alteration in original). Shannon's assertions under the ADA, read

favorably, allege ongoing violations of federal law and seek prospective relief. *See Brown v. Lieutenant Governor's Off. on Aging,* 697 F. Supp. 2d 632, 635 n. 5 (D.S.C. 2010); *Crawford v. Dep't of Corr. Educ.,* No. 3:11cv430, 2011 WL 5975254, at *5 (E.D. Va. Nov. 29, 2011). Moreover, because he challenges the propriety of his discharge, the equitable relief he seeks in the form of reinstatement of his employment has a sufficient nexus to his alleged harm. *See Ostergren v. Cuccinelli,* 615 F.3d 263, 288–89 (4th Cir. 2010) ("Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." (*quoting Dayton Bd. of Educ. v. Brinkman,* 433 U.S. 406, 420, (1977)). Thus, the doctrine of sovereign immunity does not bar Shannon's ADA claims to the extent he seeks reinstatement.

Therefore, while sovereign immunity serves as a partial bar to Shannon's claims to the extent he seeks monetary damages and back pay, it does not bar Shannon's request for reinstatement.

**2.    Shannon's Retaliation, Discriminatory Discharge, and Hostile Work Environment Claims Against Sheriff Irving Will Be Dismissed Because Shannon Failed to Properly Exhaust his Administrative Remedies**

Having established that the doctrine of sovereign immunity does not bar Shannon's recovery to the extent he seeks reinstatement, the Court next must evaluate whether Shannon properly exhausted his administrative remedies prior to filing this case.

**a.    Legal Standard:  Exhaustion of Administrative Remedies Under the ADA**

The ADA incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including the requirement that a plaintiff must exhaust his or her administrative remedies by filing a charge with the EEOC before filing suit in federal court.

*Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012).  The contents of the EEOC charge then govern the scope of the plaintiff's right to file a federal lawsuit.  *See, e.g., Cowgill v. First Data Tech., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022); *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) ("In any subsequent lawsuit alleging unlawful employment practices under [the ADA], a federal court may only consider those allegations included in the EEOC charge." (citation omitted)).  If a plaintiff's ADA claims "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Balas*, 711 F.3d at 407 (internal citations and quotation marks omitted).  Given that a plaintiff must exhaust administrative remedies, staying within the scope of the EEOC charge assures that a federal court has jurisdiction over a claim.  *See id.*

Congress' intended purpose for the exhaustion requirement was "to serve the primary purposes of notice and conciliation." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  This "ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Cowgill*, 41 F.4th at 384 (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)).  While striving to accomplish these purposes, the Fourth Circuit has made clear that the terms of an EEOC charge should be construed "liberally" because "lawyers do not typically complete the administrative charges." *Id.* at 509 (citation omitted).  The goal of the district court should also be to "strike a balance between providing notice to employers and . . . ensuring that plaintiffs are not tripped up over technicalities." *Sydnor,* 681 F.3d at 594.  Furthermore, "the exhaustion requirement should not become a tripwire for hapless plaintiffs." *Id.*  The purpose is "to stop clever parties from circumventing statutory commands, . . . not [to] erect insurmountable barriers to litigation out of overly technical concerns." *Id.*

17

Accordingly, a charge can be reviewed only if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b) (2004). While it is important that the claims are "reasonably related," they need not be "precisely the same." *Sydnor*, 681 F.3d at 595 (citation omitted).

>   **b.      Because the EEOC Charge Controls the Allegations this Court May Consider, Shannon's Retaliation, Discriminatory Discharge, and Hostile Work Environment Counts Will Be Dismissed**

Although Shannon exhausted his administrative remedies as to his first count, failure to accommodate, he failed to exhaust his administrative remedies as to the remaining three: retaliation, discriminatory discharge, and hostile work environment.[11] He did not raise those three claims in his EEOC Charge, nor did he properly amend his Charge to include them.

The Charge includes no allegations that would put the Sheriff on notice of Shannon's ADA claims for retaliation, discriminatory discharge, or hostile work environment. Shannon did not check the "retaliation" box on his charge form, and the narrative explaining his charge made no mention of retaliation, discriminatory discharge, or a hostile work environment. *See Cowgill*, 41 F.4th at 384 (concluding that an employee's failure to check the retaliation box on her EEOC charge form, and the fact that the charge narrative mentioned only disability discrimination, supported the conclusion that her administrative charge did not include a retaliation claim).

Shannon counters that, after he filed his charge, but before the EEOC issued its final determination, he "notif[ed] the EEOC investigator [by email] . . . of additional acts of

---

[11] Shannon specifically invokes failure to accommodate in his EEOC Charge. (ECF No. 9-1, at 1–2.) Although Shannon's EEOC Charge is succinct, the Court readily concludes that it put the Sheriff "on notice of" failure to accommodate.

discrimination arising out of the original charge."[12]  (ECF No. 10, at 3.)  However, the Fourth

Circuit has established that, in evaluating a plaintiff's post-charge communications with the

EEOC, it is "objectively illogical to a view private letter from a complaining party to the EEOC

as constructively amending a formal charge, given that one of the purposes of requiring a party

to file charges with the EEOC is to put the charged party on notice of the claims raised against

it." *Sloop v. Memorial Mission Hosp. Inc.*, 198 F.3d 147, 149 (4th Cir. 1999); *Cowgill*, 41 F.4th

at 385.  Indeed, both the *Sloop* and *Cowgill* courts held that the plaintiff before them did not

exhaust her remedies when she failed to amend her initial charge of discrimination to include a

retaliation claim despite engaging in post-charge communications with the EEOC about

retaliation.  *Sloop*, 198 F.3d at 149; *Cowgill*, 41 F.4th at 385.

Because Shannon's EEOC Charge did not allege retaliation, discriminatory discharge, or

hostile work environment claims, and because he did not properly amend his Charge, Shannon's

claims for those three causes of action will be dismissed for failure to exhaust administrative

remedies.  However, having found that Shannon administratively exhausted his failure to

accommodate claim, the Court turns to that claim for analysis on the merits.

### 3.     Shannon's Complaint States a Claim for Failure to Accommodate Under the ADA

#### a.     Legal Standard: ADA Reasonable Accommodation

To establish a *prima facie* case for failure to accommodate under the ADA, a plaintiff

must show "(1) that [he or] [she] was an individual who had a disability within the meaning of

the statute; (2) that the employer had notice of [his or] [her] disability; (3) that with reasonable

---

[12] With his Opposition, Shannon attaches four documents as exhibits.  (ECF No. 10-1, at 2–5.)  These documents pertain largely to emails Shannon sent to Charles Hernandez, who appears to be the EEOC officer reviewing his claim.  The Court cannot consider these documents.  Even if the Court could consider them, they would not change the outcome of this decision.

accommodation [he or] [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Jacobs v. N. C. Admin. Off. of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015) (citation omitted) (second, fourth, and sixth alteration in original); *Watson v. Fairfax Cty., Va.*, 297 F. Supp. 3d 591, 606 (E.D. Va. 2018) (evaluating a reasonable accommodation claim) (citations omitted). An accommodation is considered reasonable "unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). The ADA defines undue hardship as "an action requiring significant difficulty or expense" when considered in light of several factors. 42 U.S.C. § 12111(10)(A)–(B).

One prong of the test requires deeper evaluation here: the third factor—whether the plaintiff could perform his or her job "with reasonable accommodation." To state a claim for reasonable accommodation, the employee must show that he or she was a "qualified individual" and "could perform the essential functions of the job or . . . if not, whether any reasonable accommodation by [his or her] employer would enable [him or her] to perform those functions." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 56 (4th Cir. 2002) (quoting *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)) (internal citations omitted) (third and fifth alterations in original). The term "reasonable accommodation" under the ADA may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and[,]
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

20

Specifically, "the purpose of reasonable accommodation is to allow a disabled employee to perform the essential functions of his [or her] job." *Harmer v. Va. Elec.*, 831 F. Supp. 1300, 1306 (E.D. Va. 1993).  However, an employer "is not obligated to provide an employee the accommodation he or she requests or prefers; the employer need only provide some reasonable accommodation." *Crawford v. Union Carbide Corp.*, 202 F.3d 257, 261 (4th Cir. 1999) (unpublished per curiam) (internal quotations and citations omitted).  An accommodation is considered reasonable "unless [the employer] can demonstrate that the accommodation would impose an undue hardship," 42 U.S.C. § 12112(b)(5)(A), which, as noted earlier, is "an action requiring significant difficulty or expense" when considered in light of several factors identified in 42 U.S.C. § 12111(10)(A)–(B).

> **b.    Shannon States a Claim for ADA Failure to Accommodate Because He Alleges that He Can Perform His Essential Work Functions with an Accommodation and the Sheriff Does Not State that the Accommodation is Unreasonable, Much Less an Undue Hardship**

The Court will deny the Motion to Dismiss as to Shannon's reasonable accommodation claim against the Sheriff because Shannon has plausibly pled a *prima facie* case of failure to accommodate against Sheriff Irving.

To state a claim for failure to accommodate under the ADA, Shannon must show that: "(1) that [he] was an individual who had a disability within the meaning of the statute; (2) that the [Sheriff] had notice of [his] disability; (3) that with reasonable accommodation [he] could perform the essential functions of the position; and (4) that the [Sheriff] refused to make such accommodations." *Jacobs*, 780 F.3d at 579; *Watson*, 297 F. Supp. 3d at 606 (citations omitted). Three factors of this test stand undisputed:  (1) that Shannon had PTSD, which is a disability within the meaning of the statute; (2) that the Sheriff had notice of Shannon's disability and that

Shannon requested the "accommodation [of] working 40 hours per week with limited interaction with inmates," (ECF No. 9-1, at 1); and, (4) that the Sheriff refused to make such accommodations. Here, the parties dispute only the third factor—whether reasonable accommodations could allow Shannon to perform "the essential functions of the position." *Jacobs*, 780 F.3d at 579.

The Sheriff contends that Shannon does not satisfy the third factor because "Shannon fails to allege the essential functions of his job or what accommodations he needed to perform those essential functions." (ECF No. 9, at 9.) Instead, "Shannon alleges, in conclusory fashion, that the essential functions of his position did not include direct contact with inmates one hundred percent of the time." (ECF No. 9, at 9.)

But this court has not required plaintiffs to allege their essential job functions to survive a motion to dismiss. *See Jones v. HCA*, 16 F. Supp. 3d 622, 632 (E.D. Va. 2014) ("[The *pro se* plaintiff] did not set forth the 'essential functions' of his job, but [the defendant] has not provided any case law that suggests he must at this stage." (citation omitted)). Instead, courts evaluate whether a plaintiff has alleged that he or she could perform the essential functions. *See id.*; *see also Sumner v. Mary Washington Healthcare Physicians*, No. 3:15cv42, 2016 WL 5852856, at *6 (E.D. Va. Sept. 30, 2016) (concentrating on the plaintiff's ability to perform the essential job functions). Here, Shannon plausibly posits that he can perform the essential functions of a deputy sheriff. He explains that while his "reasonable accommodation only asked for a maximum of 50% of [his] work week to be in contact with inmates," "there are over 150 positions [for deputy sheriffs] in the nearly 500 person agency that do NOT require 100% of the duty to be in direct contact [with inmates]." (ECF No. 1-1, at 3). Shannon "is fully able to have contact with inmates . . . [and] frequently did on a daily basis during the light

22

assignment without issue and in full compliance with the reasonable accommodation requested." (ECF No. 1-1, at 3–4.)  Therefore, at the motion to dismiss stage, the Court concludes that Shannon's allegations that he can perform his essential job functions suffice.

Whether an accommodation is reasonable or unreasonable depends on whether the Sheriff "can demonstrate that the accommodation would impose an undue hardship."  42 U.S.C. § 12112(b)(5)(A).  The Sheriff does not counter that the accommodation Shannon sought would be unreasonable, much less that it would impose an "undue hardship."  *Id.*  The Sheriff's brief stands silent as to this factor.

Because Shannon sufficiently alleges that he can perform his essential job functions and because the Sheriff does not demonstrate that the accommodation presents an undue hardship, the Court concludes that, drawing all reasonable inferences in favor of Shannon, he has shown "that with reasonable accommodation [he] could perform the essential functions of the position."  *Jacobs*, 780 F.3d at 579.  Shannon fulfills the third prong of the failure to accommodate test.  With none of the other three applicable factors disputed, Shannon states a claim of failure to accommodate under the ADA against the Sheriff.  The Court will deny the Motion to Dismiss as to Shannon's first count:  failure to accommodate.

### IV.  Conclusion

For the foregoing reasons, the Court will GRANT in part and DENY in part the

Defendants' Motion to Dismiss.

1. The Court will grant the Motion to Dismiss as to Shannon's claims against the Sheriff's Office;

2. The Court will grant the Motion to Dismiss as to all four claims against the Sheriff to the extent they seek monetary damages and backpay;

3. The Court will deny the Motion to Dismiss as to Shannon's failure to accommodate claim against the Sheriff to the extent Shannon seeks reinstatement;

4. The Court will grant the Motion to Dismiss as to Shannon's retaliation claim against the Sheriff for failure to exhaust administrative remedies;

5. The Court will grant the Motion to Dismiss as to Shannon's discriminatory discharge claim against the Sheriff for failure to exhaust administrative remedies; and,

6. The Court will grant the Motion to Dismiss as to Shannon's hostile work environment claim against the Sheriff for failure to exhaust administrative remedies.

An appropriate Order shall issue.

It is SO ORDERED.

Date: 3-30-2023
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge

24